# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
June 4, 2021

Lyle W. Cayce
Clerk

No. 20-60120

Gurbhej Singh,

*Petitioner*,

*versus*

Merrick Garland, *U.S. Attorney General*,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A201 686 535

Before Dennis and Engelhardt, *Circuit Judges*, and Hicks, *Chief District Judge*.*

Per Curiam:†

Gurbhej Singh, a native and citizen of India, petitions for review of the order of the Board of Immigration Appeals (BIA) dismissing his appeal of the immigration judge's denial of his applications for asylum, withholding of

---

* Chief Judge of the Western District of Louisiana, sitting by designation.

† Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-60120

removal, and relief under the United Nations Convention Against Torture (CAT). He also seeks, for the first time in any forum, a discretionary grant of humanitarian asylum. We lack jurisdiction to consider Singh's unexhausted request for humanitarian asylum.[1] *See Roy v. Ashcroft*, 389 F.3d 132, 137 (5th Cir. 2004). In all other respects, we deny the petition for review.

Singh fails to show that the BIA's decision to deny his asylum application was unsupported by substantial evidence. *See Zhang v. Gonzales*, 432 F.3d 339, 344 (5th Cir. 2005); *Lopez-Gomez v. Ashcroft*, 263 F.3d 442, 444 (5th Cir. 2001). Neither the beatings and taunting Singh received at the hands of Congress Party adherents nor his prolonged detention by local police rise to the level that the BIA's finding of no past persecution was so contrary to the evidence as to be untenable. *See, e.g., Eduard v. Ashcroft*, 379 F.3d 182, 187-88 (5th Cir. 2004); *Tesfamichael v. Gonzales*, 469 F.3d 109, 117 (5th Cir. 2006). Nor did Singh establish a likelihood of future persecution if removed to India. *See Tesfamichael*, 469 F.3d at 113. Specifically, by inadequately briefing the issue, Singh abandoned any argument that the Board's finding that he could safely relocate within India was error. *See Mejia v. Whitaker*, 913 F.3d 482, 490 (5th Cir. 2019). In any event, the record evidence does not compel a finding contrary to the BIA's on the question of internal relocation. *See Gomez-Palacios v. Holder*, 560 F.3d 354, 358 (5th Cir. 2009).

---

[1] An alien who lacks a well-founded fear of future persecution may nonetheless qualify for "humanitarian asylum" by demonstrating that, in light of the severity of past persecution he or she experienced, there are compelling reasons that the alien is unwilling or unable to return to his or her country of origin. *Compare Shehu v. Gonzales*, 443 F.3d 435, 440 (5th Cir. 2006) (citing 8 C.F.R. § 208.13(b)(1)(iii)(A)) *with Matter of Chen*, 20 I. & N. Dec. 16, 19 (BIA 1989). This method of qualifying for asylum is distinguishable from the more common approach of establishing a likelihood that the alien will experience future persecution if removed, and Singh raised contentions regarding only the latter option while arguing before the immigration judge and BIA.

No. 20-60120

Because he failed to meet the standard for asylum, Singh necessarily cannot meet the more stringent standard for obtaining withholding of removal. *See Dayo v. Holder*, 687 F.3d 653, 658-59 (5th Cir. 2012); *Efe v. Ashcroft*, 293 F.3d 899, 906 (5th Cir. 2002). Regardless, Singh has failed to brief, and has therefore waived, the issue of withholding of removal. *See Soadjede v. Ashcroft*, 324 F.3d 830, 833 (5th Cir. 2003).

Finally, with respect to his application for CAT relief, Singh points to no record evidence showing that the Indian government would acquiesce to any torture he would suffer if returned to India. *See generally Chen v. Gonzales*, 470 F.3d 1131, 1139 (5th Cir. 2006). Insofar as Singh relies largely on evidence of general country conditions to establish the likelihood of torture, "[g]eneralized country evidence tells us little about the likelihood state actors will torture any particular person." *Qorane v. Barr*, 919 F.3d 904, 911 (5th Cir. 2019). And to the extent Singh failed to show that the actions of local police constituted persecution, "[i]t follows *a fortiori* [that] they do not constitute torture." *Id*. Singh fails to demonstrate error in the decision to deny CAT relief. *See Chen*, 470 F.3d at 1139; *Zhang*, 432 F.3d at 344.

For the foregoing reasons, the petition for review is DENIED.

No. 20-60120

JAMES L. DENNIS, *Circuit Judge*, specially concurring:

This case implicates an error in this circuit's caselaw that I previously noted in *Gjetani v. Barr*, 968 F.3d 393, 400 (5th Cir. 2020) (Dennis, J., dissenting). Although the Immigration Judge (IJ) and Board of Immigration Appeals (BIA) found the petitioner Gurbhej Singh to be credible, they denied his application for asylum on the ground that the two attacks he endured as a result of his membership in the Shiromani Akali Dal Amritsar Mann political party were not severe enough to amount to persecution within the meaning of 8 U.S.C. § 1101(a)(42)(A). In accordance with the majority's holding in *Gjetani*, 968 F.3d at 396-97 & n.2, the court today considers whether this ruling is supported by "substantial evidence," a highly deferential standard of review that is normally reserved for the BIA's factual determinations. *See id.* at 396 (quoting *Zhao v. Gonzales*, 404 F.3d 295, 306 (5th Cir. 2005)). But determining what Congress meant by the statutory term "persecution" and applying that standard to a set of undisputed facts "is a basic matter of statutory interpretation, which is a quintessential question of law." *Id.* at 401 (Dennis, J., dissenting) (internal quotes omitted); *see also Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1068 (2020) (holding that "the application of a legal standard to undisputed or established facts" is a "question of law" within the meaning of the Immigration and Nationality Act).

Indeed, in instructing us to apply the substantial evidence standard to the BIA's interpretation of "persecution," our precedents mandate a nonsensical analysis. When reviewing for substantial evidence, we look to the record to determine whether "the evidence is so compelling that no reasonable factfinder could reach a contrary conclusion" on the matter. *Chen v. Gonzales*, 470 F.3d 1131, 1134 (5th Cir. 2006). This makes sense when we are reviewing an actual factual finding; if the record contains transcripts of all of the witnesses testifying that "A" happened and a video of "A" occurring, but the BIA nonetheless finds that "A" did not occur, the record probably

compels a contrary finding. But what possible evidence could the record contain on the question of what Congress meant when it used the term "persecution" in 8 U.S.C. § 1101(a)(42)(A)? We generally do not require asylum applicants to introduce as evidentiary exhibits copies of the text of the asylum statute or the committee reports from when the statute was enacted, and so the record will almost never contain "evidence" bearing on whether the BIA was right or wrong about how 8 U.S.C. § 1101(a)(42)(A) should be interpreted.

Instead, the question of whether a set of undisputed facts fit the statutory term "persecution" should be reviewed as a question of law, and "the BIA's interpretation" should be "due deference, if at all, only to the extent called for under the familiar *Chevron* framework." *Gjetani*, 968 F.3d at 401 (Dennis, J., dissenting) (citing *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 841 (1984)). Like in *Gjetani*, the Government does not argue here that "persecution" "is the type of 'ambiguous statutory term' for which 'the BIA should be accorded *Chevron* deference as it gives the word concrete meaning through a process of case-by-case adjudication.'"[1] 968 F.3d at 401 (Dennis, J., dissenting) (alteration omitted) (quoting *INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999)); *cf. INS v. Cardoza-Fonseca*, 480 U.S. 421, 448–449 (1987) (holding that the phrase "well-founded fear," which is also found in 8 U.S.C. § 1101(a)(42)(A), is ambiguous for *Chevron* purposes). In the absence of such an argument, we

---

[1] "Were that the case, we would examine the BIA's interpretation to decide if it is unreasonable or clearly contrary to congressional intent, as well as whether its application was consistent with the agency's past precedents." *Gjetani*, 968 F.3d at 401 n.2 (Dennis, J., dissenting); s*ee Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2126 (holding agency statutory interpretations that are adopted without a reasoned explanation for a change of course are not entitled to *Chevron* deference); *Laclede Gas Co. v. F.E.R.C.*, 722 F.2d 272, 275 (5th Cir. 1984) ("An agency must either conform to its prior precedent or explain its reasoning for departure from that precedent.").

No. 20-60120

should apply ordinary *de novo* review, utilizing the standard canons of construction and our independent judgement to decide whether the undisputed attacks Singh suffered as a result of his political affiliation amount to persecution under 8 U.S.C. § 1101(a)(42)(A).

Nevertheless, under this circuit's rule of orderliness, *Gjetani* is binding precedent until the en banc court or the Supreme Court says otherwise. *See Mercado v. Lynch*, 823 F.3d 276, 279 (5th Cir. 2016). And, although I believe it is an incoherent question to ask in this context, it is true that there is no evidence in the record about the correct way to interpret the term "persecution" in 8 U.S.C. § 1101(a)(42)(A). The record obviously cannot compel the conclusion that the BIA is misinterpreting 8 U.S.C. § 1101(a)(42)(A) when it has nothing at all to say on the matter, and I thus cannot say that the court incorrectly applies the substantial evidence standard that we are bound to utilize. I therefore concur.